IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROGERS MWANGI, Individually and For Others Similarly Situated<br><br>Plaintiff,<br><br>v.<br><br>ARISTO HEALTHCARE SERVICES LLC, a Washington limited liability company<br><br>Defendant. | Case No. ______________<br><br>ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT<br><br>Jury Trial Demanded<br><br>FLSA Collective Action<br>Rule 23 Class Action |

# ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

## SUMMARY

1. Rogers Mwangi (Mwangi) brings this class and collective action to recover unpaid wages and other damages from Aristo Healthcare Services (Aristo).

2. Aristo employed Mwangi as one of its Hourly Employees (defined below).

3. Aristo paid Mwangi and the other Hourly Employees by the hour.

4. Mwangi and the other Hourly Employees regularly work more than 40 hours in a workweek.

5. But Aristo does not pay Mwangi and other Hourly Employees for all their hours worked.

6. Instead, Aristo automatically deducts 30 minutes a day from these employees for so called “meal periods” (Aristo’s “auto-deduction policy”).



JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

7. Aristo does not pay them for this time.

8. But Mwangi and the other Hourly Employees do not actually receive *bona fide* meal periods.

9. They likewise do not receive *bona fide* rest periods.

10. Instead, Aristo requires Mwangi and the other Hourly Employees to remain on duty and perform their regular job duties throughout their shifts and/or subjects them to interruptions during attempted "meal periods" and "rest periods."

11. Aristo's failure to provide Mwangi and the other Hourly Employees with *bona fide* meal and rest periods violates the Washington Industrial Welfare Act (WIWA) and related Washington Department of Labor and Industries (DOLI) regulations.

12. Aristo's auto-deduction policy likewise violates the Fair Labor Standards Act (FLSA) and the Washington Minimum Wage Act (WMWA) by depriving Mwangi and the other Hourly Employees of overtime wages of at least 1.5 times their regular rates of pay for all hours worked in excess of 40 in a workweek.

13. Likewise, as a result of its auto-deduction policy, Aristo willfully withholds earned wages from Mwangi and the other Hourly Employees in violation of the Washington Wage Rebate Act (WWRA).

## JURISDICTION & VENUE

14. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

15. This Court also has supplemental jurisdiction over the state-law claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

16. This Court has general personal jurisdiction over Aristo because it is a Washington limited liability company and maintains its principal place of business in Washington.

17. Venue is proper because Aristo maintains its principal place of business in Seattle, Washington, which is in this District and Division. *See* 28 U.S.C. § 1391(b)(1).



JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

## PARTIES

18. Aristo employed Mwangi as a certified nursing assistant (CNA) from approximately February 2019 through November 2022.

19. Throughout his employment, Aristo classified Mwangi as non-exempt and paid him by the hour.

20. Throughout his employment, Aristo subjected Mwangi to its auto-deduction policy.

21. But throughout his employment, Mwangi did not actually receive *bona fide* meal breaks.

22. Mwangi brings this action on behalf of himself and other similarly situated hourly Aristo employees who were subject to Aristos' auto-deduction policy.

23. The FLSA Collective of similarly situated employees is defined as:

> All hourly Aristo employees who received an automatic meal period deduction at any time during the past 3 years through final resolution of this action (the "FLSA Collective Members")

24. Mwangi also seeks to represent such a class under Washington law pursuant to FED. R. CIV. P. 23.

25. The Washington Class of similarly situated employees is defined as:

> All hourly Aristo employees in Washington who received an automatic meal period deduction at any time during the past 3 years through final resolution of this action (the "Washington Class Members")

26. The FLSA Collective Members and the Washington Class Members are collectively referred to as the "Hourly Employees."

27. Aristo is a Washington limited liability company with its principal place of business in Seattle, Washington.

28. Aristo can be served through its registered agent: Charanpreet Gill, 4500 9th Ave. NE, Seattle, Washington 98105.



JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

## FLSA COVERAGE

29. At all relevant times, Aristo was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

30. At all relevant times, Aristo was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

31. At all relevant times, Aristo was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. §203(s)(1).

32. At all relevant times, Aristo had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

33. At all relevant times, Mwangi and the other Hourly Employees were Mwangi's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

34. At all relevant times, Mwangi and the other Hourly Employees were engaged in commerce or in the production of goods for commerce.

## FACTS

35. Aristo bills itself as a "healthcare staffing services company focused on providing quality staffing services, educational consultation and patient care."[1]

36. To meet its business objectives, Aristo employs workers, including Mwangi and the other Hourly Employees, to care for patients.

37. For example, Aristo employed Mwangi as a CNA from approximately February 2019 through November 2022 in and around the Seattle area.

[1] https://aristohealthcareservices.com/about-us/ (last visited June 24, 2025).



JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

38. As a CNA, Mwangi's job duties included assisting patients in conducting activities of daily living by serving meals to patients, ambulating and positioning patients, and bathing and grooming patients in clinical settings.

39. Throughout his employment, Mwangi regularly worked more than 40 hours a workweek.

40. Indeed, Mwangi typically worked approximately 12 hours a day for 4 days a week (48 hours) "on the clock."

41. For example, during the last week of July 2022, Mwangi worked approximately 48 hours.

42. Aristo paid Mwangi approximately $25 an hour.

43. Mwangi reported his "on the clock" hours to Aristo through its uniform timekeeping system.

44. Aristo's records reflect the hours Mwangi worked each week "on the clock."

45. Likewise, the other Hourly Employees typically work approximately 12 hours a day for 4 days a week (48 hours) "on the clock."

46. Aristo subjects Mwangi and the other Hourly Employees to common policies based on common systems and methods it selects and controls.

47. Aristo requires Mwangi and the other Hourly Employees to abide by common work, time, pay, meal period, rest period, and overtime policies and procedures.

48. But Aristo does not pay Mwangi and the other Hourly Employees for all their hours worked, including overtime hours.

49. Specifically, Aristo automatically deducts 30 minutes a workday from Mwangi's and the other Hourly Employees' recorded hours and wages for so called "meal periods."

50. Aristo automatically deducts this time regardless of whether Mwangi and the other Hourly Employees actually receive full, uninterrupted, 30-minute meal periods.

51. Aristo simply assumes Mwangi and the other Hourly Employees receive *bona fide* meal periods each shift they work.



JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

52. But Mwangi and the other Hourly Employees do not actually receive *bona fide* meal periods when they work more than five hours in a day.

53. Likewise, these employees do not receive a *bona fide* second meal period when they work in excess of 11 hours in a workday.

54. Instead, Aristo requires Mwangi and the other Hourly Employees to remain on duty and perform compensable work throughout their shifts for Aristo's predominant benefit, including during their "meal periods."

55. And Aristo subjects Mwangi and the other Hourly Employees to work interruptions during their unpaid "meal periods."

56. Thus, Mwangi and the other Hourly Employees are not free to engage in personal activities during their unpaid "meal periods."

57. Rather, during their unpaid "meal periods," Mwangi and the other Hourly Employees are forced to substantially perform their regular patient care job duties and responsibilities.

58. Thus, Mwangi and the other Hourly Employees routinely spend their unpaid "meal periods" performing work for Aristo's—not these employees'—predominant benefit.

59. This unpaid time is compensable under the FLSA (and Washington law) because Aristo knew, or should have known, that (1) Mwangi and the other Hourly Employees were performing unpaid work during their "meal periods," (2) they were interrupted with work duties during any attempted "meal period," (3) they were not completely relieved of all duties during their "meal periods," (4) they entirely skipped the "meal period" due to work demands, (5) the "meal period" was less than 20 consecutive minutes, (6) they were not free to engage in personal activities during their "meal periods" because of work interruptions, (7) they remained on Aristo's premises or under Aristo's supervision, and/or (8) they spent their unpaid "meal periods" substantially performing their regular patient care duties for Aristo's predominant benefit.

60. Aristo fails to exercise its duty as Mwangi's and the other Hourly Employees' employer to ensure these employees are not performing work that Aristo does not want performed during their unpaid "meal periods."



JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

61. And Aristo knows Mwangi and the other Hourly Employees routinely perform work "off the clock" during their unpaid "meal periods" because Aristo expects and requires them to do so.

62. Mwangi and the other Hourly Employees have complained to Aristo's management and their supervisors about being forced to work during their unpaid "meal periods."

63. Despite accepting the benefits, Aristo does not pay Mwangi and the other Hourly Employees for the compensable work they perform during their automatically deducted "meal periods."

64. Thus, Aristo required, requested, suffered, or permitted Mwangi and the other Hourly Employees to work during their unpaid "meal periods."

65. Despite accepting the benefits, Aristo does not pay Mwangi and the other Hourly Employees for the compensable work they perform "off the clock."

66. Likewise, Aristo fails to provide Mwangi and the other Hourly Employees with a *bona fide* 10-minute rest period for every four hours worked or major fraction thereof.

67. Rather, Aristo requires Mwangi and the other Hourly Employees to work throughout their shifts, including during any so called "rest periods" and/or subjects them to work interruptions during any attempted rest periods.

68. Aristo's failure to provide Mwangi and the other Hourly Employees with *bona fide*, duty-free meal and rest periods violates the WIWA and related DOLI regulations, in addition to violating the FLSA and WMWA.

## Class and Collective Action Allegations

69. Mwangi brings his claims as a class and collective action under Section 216(b) of the FLSA and as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other Hourly Employees.

70. Like Mwangi, the other Hourly Employees are victimized by Aristo's auto-deduct policy and failure to provide or make available rest periods.



JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

71. Other Hourly Employees worked with Mwangi and indicated they were paid in the same manner, performed similar work, and were subject to Aristo's auto-deduct policy and failure to provide or make available rest periods.

72. Based on his experience, Mwangi is aware Aristo's auto-deduct policy and failure to provide or make available rest periods were imposed on other Hourly Employees.

73. The Hourly Employees are similarly situated in the most relevant respects.

74. Even if their job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to earned wages, overtime wages, and *bona fide* meal and rest periods.

75. Specific job titles or precise job locations of the other Hourly Employees do not prevent class or collective treatment.

76. Rather, Aristo's auto-deduction policy and failure to provide or make available rest periods renders Mwangi and the other Hourly Employees similarly situated for the purpose of determining the right to overtime wages, earned wages, and required meal and rest periods.

77. Aristo's records reflect the number of hours the Hourly Employees recorded working "on the clock" each week.

78. Aristo's records further reflect it deducted at least 30 minutes a day for so-called "meal periods."

79. The back wages owed to Mwangi and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

80. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Aristo's records, and there is no detraction from the common nucleus of liability facts.

81. Therefore, the issue of damages does not preclude class or collective treatment.

82. Mwangi's experiences are therefore typical of the experiences of the other Hourly Employees.



JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

83. Mwangi has no interest contrary to, or in conflict with, the other Hourly Employees that would prevent class or collective treatment.

84. Like each Hourly Employee, Mwangi has an interest in obtaining the unpaid wages owed under federal and Washington law.

85. Mwangi and his counsel will fairly and adequately protect the interests of the Hourly Employees.

86. Mwangi retained counsel with significant experience in handling complex class and collective action litigation.

87. Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and Aristo will reap the unjust benefits of violating the FLSA and Washington law.

88. Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

89. Indeed, the multiplicity of actions would create hardship to the Hourly Employees, the Court, and Aristo.

90. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

91. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

92. Among the common questions of law and fact are:

a. Whether Aristo engaged in a policy and practice of automatic 30-minute deductions for "meal periods" that were not *bona fide*, continuous, and uninterrupted;

b. Whether Aristo's auto-deduction policy deprived Mwangi and the other Hourly Employees of wages for time worked during meal periods that were not *bona fide*, continuous, and uninterrupted;



JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

c. Whether Aristo knew, or had reason to know, Mwangi and the Hourly Employees were requested, suffered, permitted, or allowed to work "off the clock" during their unpaid "meal periods";

d. Whether Aristo failed to provide the Hourly Employees with *bona fide* meal and/or rest periods, in violation of the WIWA and related Washington DOLI regulations;

e. Whether Aristo's decision not to pay Mwangi and the other Hourly Employees overtime wages for all overtime hours worked was made in good faith; and

f. Whether Aristo's violations were willful.

93. As part of its regular business practices, Aristo intentionally, willfully, and repeatedly violated the FLSA with respect to Mwangi and the other Hourly Employees.

94. There are many similarly situated Hourly Employees who have been denied overtime wages of at least 1.5 times their regular rates of pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

95. The Hourly Employees are known to Aristo, are readily identifiable, and can be located through Aristo's business and personnel records.

## Aristo's Violations Were Willful

96. Aristo knew it employed Mwangi and the other Hourly Employees.

97. Aristo knew it was subject to the FLSA's and WMWA's overtime provisions.

98. Aristo knew the FLSA required it to pay non-exempt employees, including Mwangi and the other Hourly Employees, overtime wages at rates of at least 1.5 times their regular rates of pay for all hours worked in excess of 40 in a workweek.

99. Aristo knew Mwangi and each Hourly Employee worked more than 40 hours in at least one workweek during the last 3 years because these employees were required to report their "on the clock" hours via Aristo's timekeeping system.



JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

100. Aristo knew Mwangi and each Hourly Employees were non-exempt employees entitled to overtime pay.

101. Aristo knew it failed to provide the Hourly Employees with *bona fide*, uninterrupted meal breaks when they worked in excess of 5 hours in a workday.

102. And Aristo knew it failed to provide the Hourly Employees with a second *bona fide*, uninterrupted meal breaks when they worked in excess of 11 hours in a workday.

103. Aristo knew the Hourly Employees did not actually receive *bona fide*, uninterrupted meal breaks.

104. Aristo knew the Hourly Employees regularly worked during their unpaid "meal periods."

105. Aristo knew it required, requested, suffered, or permitted, the Hourly Employees to work during their unpaid "meal periods."

106. Aristo knew the Hourly Employees regularly spent their unpaid "meal periods" substantially performing their regular job duties for Aristo's predominant benefit.

107. Indeed, Hourly Employees complained to Aristo's management, HR, and/or their supervisors about being forced to work during their unpaid "meal periods."

108. In other words, Aristo knew, should have known, or recklessly disregarded the fact that it did not pay the Hourly Employees for all the hours they performed compensable work.

109. Aristo's failure to pay Mwangi and the other Hourly Employees overtime at the required rates for all overtime hours worked was neither reasonable, nor was this decision made in good faith.

110. Aristo knowingly, willfully, and/or in reckless disregard of the FLSA carried out its unlawful bonus pay scheme that deprived Mwangi and the other Hourly Employees of overtime wages of at least 1.5 times their regular rates of pay for all hours worked after 40 a workweek, in violation of the FLSA.

111. Aristo knew it was subject to the WIWA and the Washinton DOLI regulations.



JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

112. Aristo knew the WIWA and the Washinton DOLI regulations required it to provide employees, including Hourly Employees, a *bona fide*, duty-free, and uninterrupted 30-minute meal period for every 5 hours worked.

113. Aristo knew its Hourly Employees did not waive their meal periods.

114. Nonetheless, Aristo failed to provide its Hourly Employees with *bona fide*, duty-free meal periods.

115. Aristo knew the WIWA and the Washinton DOLI regulations required it to provide employees, including the Hourly Employees, a *bona fide*, duty-free, and uninterrupted 10-minute rest periods for every 4 hours or major fraction thereof the Hourly Employees worked.

116. Aristo knew the FLSA and Washington law required it to pay its employees, including the Hourly Employees, for all hours they performed compensable work.

117. Aristo knew it had a duty to ensure its Hourly Employees were not performing work "off the clock" without compensation.

118. Aristo knew its Hourly Employees did not actually receive *bona fide* meal periods.

119. Aristo knew its Hourly Employees regularly worked "off the clock" during their unpaid "meal periods," as well as during any so called "rest periods."

## COUNT I
## FAILURE TO PAY OVERTIME UNDER THE FLSA
## (FLSA COLLECTIVE)

120. Mwangi brings his FLSA claim as a collective action on behalf of himself and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

121. Aristo violated, and is violating, the FLSA by employing non-exempt employees (Mwangi and the FLSA Collective Members) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek, including those worked during their unpaid "meal periods."



JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

122. Aristo's unlawful conduct harmed Mwangi and the other FLSA Collective Members by depriving them of the overtime wages they are owed.

123. Accordingly, Aristo owes Mwangi and the other FLSA Collective Members the difference between the wages actually paid and the required overtime wages actually earned.

124. Because Aristo knew or showed reckless disregard for whether this unpaid "meal period" violated the FLSA, Aristo owes Mwangi and the other Hourly Employees these wages for at least the past 3 years.

125. Aristo is also liable to Mwangi and the other Hourly Employees for an amount equal to all their unpaid overtime wages as liquidated damages.

126. Finally, Mwangi and the other Hourly Employees are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## <u>Count II</u>
## Failure to Pay Overtime Under the WMWA
## (Washington Class)

127. Mwangi brings his WMWA claim as a class action on behalf of himself and the other Washington Class Members pursuant to Fed. R. Civ. P. 23.

128. Aristo's conduct violates the WMWA. RCW 49.46, *et seq*.

129. At all relevant times, Aristo was subject to the WMWA because Aristo was (and is) an "employer" within the meaning of the WMWA. *See* RCW 49.46.010(4); *see also* RCW 49.48.082(6).

130. At all relevant times, Aristo employed Mwangi and the other Washington Class Members as its covered "employees" within the meaning of the WMWA. *See* RCW 49.46.010(3); *see also* RCW 49.48.082(5)(a).

131. The WMWA requires employers, like Aristo, to pay non-exempt employees, including Mwangi and the other Washington Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek. RCW 49.46.130 *and* RCW 49.46.090.



JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

132. Mwangi and the other Washington Class Members are entitled to overtime pay under the WMWA.

133. Aristo violated, and is violating, the WMWA by failing to pay non-exempt employees (Mwangi and the other Washington Class Members) overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek, including those worked "off the clock." *See* RCW 49.46.130; *see also* RCW 49.46.090.

134. Aristo's unlawful conduct harmed Mwangi and the other Washington Class Members by depriving them of the overtime wages they are owed under Washington law.

135. Accordingly, Aristo owes Mwangi and the other Washington Class Members the difference between the wages paid and the proper overtime wages earned RCW 49.46.090 plus pre-judgment interest at a rate of 12% per annum. RCW 49.46.090 *and* RCW 19.52.020

136. Finally, Mwangi and the other Washington Class Members are also entitled to recover their reasonable attorney's fees and costs incurred in this action. *See* RCW 49.46.30.

## COUNT III
## WILLFULLY WITHHOLDING EARNED WAGES UNDER THE WWRA
## (WASHINGTON CLASS)

137. Mwangi brings his WWRA claim as a class action on behalf of himself and the other Washington Class Members pursuant to FED. R. CIV. P. 23.

138. Aristo conduct violates the WWRA RCW 49.52, *et seq*.

139. At all relevant times, Aristo was subject to the WWRA because Aristo was (and is) an "employer" within the meaning of the WWRA. *See* RCW 49.46.010(4); *see also* RCW 49.48.082(6).

140. At all relevant times, Aristo employed Mwangi and the other Washington Class Members as covered "employees" within the meaning of the WWRA. *See* RCW 49.12.005(4); *see also* RCW 49.48.082(5)(b).

141. The WWRA prohibits employers, like Aristo, from depriving employees, including Mwangi and the other Washington Class Members, of "any part of his or her wages" and from



JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

"pay[ing] any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance or contract." RCW 49.52.050.

142. Aristo violated, and is violating, the WWRA by willfully withholding earned wages from Mwangi and the other Washington Class Members for the hours they worked during their on-duty "meal periods," which Aristo was obligated to pay under Washington law (*e.g.*, the WMWA). *See* RCW 49.52.050.

143. Aristo also violated, and is violating, the WWRA by willfully withholding earned overtime wages from Mwangi and the other Washington Class Members, which federal and Washington law (*i.e.*, the FLSA and the WMWA) obligated Aristo to pay at rates not less than 1.5 times their regular rates of pay for all hours worked in excess of 40 in a workweek. *See* RCW 49.52.050.

144. Aristo's unlawful conduct harmed Mwangi and the other Washington Class Members by willfully withholding earned wages (including earned overtime wages at the proper premium rate) from these employees which they are owed under Washington law.

145. Accordingly, Aristo owes Mwangi and the other Washington Class Members their willfully withheld earned wages plus exemplary damages in an amount equal to 2 times their willfully withheld wages RCW 49.52.070.

146. Finally, Mwangi and the other Washington Class Members are also entitled to recover their reasonable attorney's fees and costs incurred in this action. *See* RCW 49.52.070.

## COUNT IV
## FAILURE TO PROVIDE *BONA FIDE* MEAL AND REST PERIODS UNDER THE WIWA
## (WASHINGTON CLASS)

147. Mwangi brings his meal and rest period claims under the WIWA and related Washington DOLI regulations as a class action on behalf of himself and the other Washington Class Members pursuant to FED. R. CIV. P. 23.

148. Aristo's conduct violates the WIWA's and related DOLI regulations' meal period and rest period requirements RW 49.12, *et seq.*; WAC 296-126-092.



JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

149. At all relevant times, Aristo was subject to the WIWA and related DOLI regulations because Aristo was (and is) an "employer" within the meaning of the WIWA and the DOLI regulations. *See* RCW 49.12.005(3); WAC 296-126-002(1).

150. At all relevant times, Aristo employed Mwangi and the other Washington Class Members as covered "employees" within the meaning of the WIWA and the Washington DOLI regulations. *See* RCW 49.12.005(4); WAC 296-126-002(2).

151. The WIWA prohibits employers, like Aristo, from employing employees, including Mwangi and the other Washington Class Members, under conditions of labor detrimental to their health. RCW 49.12.020.

152. The DOLI regulations require employers, like Aristo, to provide employees, including Mwangi and the other Washington Class Members, meal periods of at least 30 minutes which commence no less than 2 hours nor more than 5 hours from the beginning of the employees' shift. WAC 296-126-092.

153. The DOLI regulations further mandate that meal periods shall be paid when the employee is required by the employer to remain on duty on the premises or at a prescribed work site in the interest of the employer. WAC 296-126-092.

154. And the DOLI regulations require employers, like Aristo, to provide employees, including Mwangi and the other Washington Class Members, rest periods of at least 10 minutes "on the [Aristo's] time, for each four hours of working time" or major fraction thereof. WAC 296-126-092.

155. Washington law also requires employers, like Aristo, to compensate employees, including Mwangi and the other Washington Class Members, for missed meal and/or rest periods. *See, e.g.*, *Chavez v. Our Lady of Lourdes Hosp. at Pasco*, 190 Wn.2d 507, 517-19, 415 P.3d 224 (2018); *Pellino v. Brinks Inc.*, 164 Wn. App. 668, 690-93, 267 P.3d 383 (2011).

156. Throughout the relevant period, Aristo expected and required Mwangi and the other Washington Class Members to remain on duty and perform compensable work throughout their shifts, including during their "meal periods" and "rest periods."



JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

157. Aristo and the other Washington Class Members were not relieved of all duties during their attempted meal and rest periods but instead were subject to constant work interruptions.

158. Thus, Aristo violated, and is violating, the WIWA and related DOLI regulations by failing to provide Mwangi and the other Washington Class Members *bona fide* meal and rest periods. *See* RCW 49.12.020; WAC 296-126-092.

159. Aristo's unlawful conduct harmed Mwangi and the other Washington Class Members by depriving them of the *bona fide* meal periods they are owed under Washington law.

160. Accordingly, Mwangi and the Washington Class Members are entitled to recover their unpaid wages for their missed meal and rest periods, penalties in an amount not less than $25 nor more than $1,000 per violation (WAC 296-126-226; RCW 49.12.170), and pre-judgment interest at a rate of 12% per annum (RCW 19.52.020).

161. Finally, Mwangi and the other Washington Class Members are also entitled to recover their reasonable attorney's fees and costs incurred in this action. See RCW 49.12.150.

## JURY DEMAND

162. Mwangi demands a trial by jury on all Counts.

## RELIEF SOUGHT

WHEREFORE, Mwangi, individually and on behalf of the other Hourly Employees, seeks the following relief:

(a) An Order designating this lawsuit as a collective action and authorizing notice to the Hourly Employees allowing them to join this action by filing a written notice of consent;

(b) An Order certifying this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

(c) An Order appointing Mwangi and his counsel to represent the interests of the Hourly Employees;

(d) An Order finding Aristo liable to Mwangi and the other FLSA Collective Members for all unpaid overtime wages owed under the FLSA, plus liquidated



JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

damages in an amount equal to their unpaid wages;

(e) An Order finding Aristo liable to Mwangi and the other Washington Class Members for failing to provide them with *bona fide* meal and rest periods plus all available statutory penalties;

(f) An Order finding Aristo liable to Mwangi and the other Washington Class Members for all unpaid overtime wages owed under the WMWA;

(g) An Order finding Aristo liable to Mwangi and the other Washington Class Members for all willfully withheld wages owed under the WWRA, plus exemplary damages in an amount equal to 2 times their willfully withheld wages;

(h) A Judgment against Aristo awarding Mwangi and the other Hourly Employees all their willfully withheld wages, unpaid overtime, liquidated damages, exemplary damages, statutory damages, attorney's fees, costs, expenses, and any other penalties available under the FLSA, WMWA, WWRA, and WIWA;

(i) An award of interest on all amounts at the highest rate allowable by law;

(j) An Order awarding attorney's fees, costs, and expenses; and

(k) All such other and further relief as may be necessary and appropriate.

Date: July 2, 2025

Respectfully submitted,

FRANK FREED SUBIT & THOMAS, LLP

By: */s/ Michael C. Subit*
Michael C. Subit, WSBA #29189
msubit@frankfreed.com
705 Second Ave., Suite 1200
Seattle, Washington 98104
Telephone: 206.682.6711

JOSEPHSON DUNLAP, LLP

Michael A. Josephson*

mjosephson@mybackwages.com
Andrew W. Dunlap*
adunlap@mybackwages.com
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Telephone: 713.352.1100

BRUCKNER BURCH, PLLC

Richard J. (Rex) Burch*
rburch@brucknerburch.com
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Telephone: 713.877.8788

**Pro Hac Vice Applications Forthcoming*

ATTORNEYS FOR MWANGI
& THE HOURLY EMPLOYEES